# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,
378 N. Main Avenue, Tucson, AZ 85701,

                  Plaintiff,

     v.

NATIONAL MARINE FISHERIES
SERVICE, 1315 East-West Highway, Silver
Spring, MD 20910; EUGENIO PIÑEIRO
SOLER, in his official capacity as Assistant
Administrator for the National Marine
Fisheries Service, 1315 East-West Highway,
Silver Spring, MD 20910

               Defendants.

Case No._____

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

## INTRODUCTION

1.　　Plaintiff Center for Biological Diversity ("Center") brings this case challenging the National Marine Fisheries Service ("Service") failure to issue a required 90-day finding on the Center's petition to list the American horseshoe crab ("crab"), in violation of the Endangered Species Act's ("ESA" or "Act") nondiscretionary, congressionally mandated deadlines. The agency's failure to meet the deadline delays crucial, lifesaving protections for the crab, increasing its risk of extinction.

2.　　Plaintiff brings this lawsuit for declaratory and injunctive relief, seeking an Order declaring that the Service violated 16 U.S.C. § 1533(b)(3)(A) by failing to timely issue a 90-day finding for the crab and directing the Service to issue the finding by a date certain.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c), (g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). This Court has authority to issue declaratory and injunctive relief pursuant to the ESA, 16 U.S.C. § 1540(g); Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; and Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2).

4.      Plaintiff provided Defendants with 60-days' notice of the ESA violation, as required by 16 U.S.C. § 1540(g)(2)(A) and (C), by a letter to the Service dated November 5, 2025, explaining the Center's intent to sue. Defendants have not remedied the violations set out in the notice and an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this judicial district.

## PARTIES

6.      Plaintiff the CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization that works through science, law, and policy to protect imperiled wildlife and their habitat. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices throughout the United States, including D.C. The Center has more than 93,000 active members throughout the country.

7.      The Center brings this action on behalf of its organization, staff, and members, who derive ecological, recreational, aesthetic, educational, scientific, professional, and other benefits from the American horseshoe crab and its habitat. As a multitude of threats continue to push the crab dangerously close to extinction, Plaintiff's members' interests in protecting and

recovering this species and their habitat are directly harmed by the Service's failure to issue timely findings, delaying critical protections under the ESA that can put the American horseshoe crab on a path to recovery.

8.    For example, Center member Emily Diznoff lives in North Carolina and regularly hikes and explores the natural world within the habitat range of the American horseshoe crab. Diznoff was born and raised in Wilmington, Delaware, and spent her summers in Delaware Bay at Rehoboth Beach. She has regularly visited her family at Cape Henlopen State Park and Lewes Beach, Delaware, for more than a decade, and intends to continue regularly visiting. Diznoff also regularly visits sandy beaches and coastal areas of North Carolina, including the Outer Banks and regularly travels to Georgia's Cumberland National Seashore and observes horseshoe crabs there. She has taken recent trips to Delaware's Slaughter Beach with her family to witness horseshoe crab mass spawning events. Diznoff and her husband have observed crabs in these areas, and they plan to return this spring and summer to specifically search for the American horseshoe crab. Diznoff is harmed by the Service's failure to timely protect these crabs because the potential loss of the crabs would lessen her experience in nature and it harms her recreational pursuits because she specifically travels to see horseshoe crabs along the Atlantic Coast.

9.    Defendants' violation of the ESA's nondiscretionary mandatory deadline has delayed the ESA's protections for the crabs, harming the Center's members' interests in them by decreasing the likelihood that members will encounter the species as part of their personal and professional excursions. These injuries are actual, concrete injuries that are presently suffered by the Center's members, are directly caused by Defendants' acts and omissions, and will continue unless the Court grants relief. The relief sought would redress these injuries. The Center and its members have no other adequate remedy at law.

10.     Defendant NATIONAL MARINE FISHERIES SERVICE is the agency within the National Oceanic and Atmospheric Administration ("NOAA"). NOAA is an agency of the U.S. Department of Commerce. NMFS is the agency to which the Secretary of Commerce has delegated his authority to conserve endangered and threatened marine and anadromous species under the ESA.

11.     Defendant EUGENIO PIÑEIRO SOLER is sued in his official capacity as Assistant Administrator for NOAA Fisheries (also known as NMFS) and in that capacity has responsibility for its administration and implementation of the ESA and compliance with all other federal laws.

## STATUTORY FRAMEWORK

### The Endangered Species Act

12.     The Endangered Species Act, 16 U.S.C. §§ 1531–1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978). Its fundamental purposes are "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

13.     The ESA defines a "species" as "subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532 (20).

14.     The ESA requires the Service to determine whether any species is endangered or threatened because of any one of, or combination of, the following factors: (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for

commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. Id. § 1533(a)(1).

15.     If the Service determines that the species is not endangered throughout all its range, the ESA requires the agency to examine whether it is endangered or threatened throughout any "significant portion" of its range. *Id.* §§ 1532(6), (20).

16.     The Service must base all listing determinations "solely on the basis of the best scientific and commercial data available." *Id.* § 1533(b)(1)(A).

17.     To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process, whereby citizens may petition the Service to list a species as endangered or threatened. *Id.* § 1533(b)(3). In response, the Service must publish a series of three decisions according to statutory deadlines. First, within 90 days of receipt of a listing petition, the Service must, "to the maximum extent practicable," publish an initial finding as to whether the petition, "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* §(b)(3)(A). This is known as the "90-day finding." If the Service determines in the 90-day finding that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected, and the process concludes.

18.     If the Service determines that a petition presents substantial information indicating that listing "may be warranted," the agency must publish that finding and proceed with a scientific review of the species' status, known as a "status review." *Id.*

19.     Upon completing the status review, and within 12 months of receiving the petition, the Service must publish a "12-month finding" with one of three listing determinations: (1) listing is "warranted"; (2) listing is "not warranted"; or (3) listing is "warranted but

precluded" by other proposals for listing species, provided certain circumstances are met. *Id.*
§ 1533(b)(3)(B).

20.     If the Service determines that listing is "warranted," the agency must publish that
finding in the Federal Register, along with the text of a proposed regulation to list the species as
endangered or threatened and to designate critical habitat for the species. *Id.* § 1533(a)(3)(A),
(b)(3)(B)(ii). Within one year of publication of the proposed listing rule, the Service must
publish in the Federal Register the final rule implementing its determination to list the species
and designate critical habitat. *Id.* § 1533(b)(6)(A).

21.     If the Service instead issues a finding that listing the species is "not warranted,"
the process concludes, and that finding is a final agency action subject to judicial review. *Id.* §
1533(b)(3)(C)(ii).

22.     The ESA has a suite of substantive and procedural legal protections that apply to
species once they are listed as endangered or threatened. For example, section 4(a)(3) of the Act
requires the Service to designate "critical habitat" for each endangered and threatened species.
*Id.* § 1533(a)(3).

23.     In addition, ESA section 7(a)(2) requires all federal agencies to ensure that their
actions do not "jeopardize the continued existence" of any endangered or threatened species or
"result in the destruction or adverse modification" of any listed species' critical habitat. *Id.* §
1536(a)(2).

24.     ESA section 9 prohibits, among other actions, "any person" from causing the
"take" of any protected fish or wildlife without lawful authorization from the Service. *Id.* §§
1538(a)(1)(B), 1539; see also *id.* § 1532(19) (defining "take"). Other provisions require the
Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the

Service to acquire land for the protection of listed species, *id.* § 1534; and authorize the Service to make federal funds available to states to assist in the conservation of endangered and threatened species, *id.* § 1535(d).

## FACTUAL BACKGROUND

**The American Horseshoe Crab**

25.     The horseshoe crab is one of the oldest living species on Earth, with fossils dating back as far as 450 million years ago. Horseshoe crabs have persisted through the ages and are often referred to as living fossils. However, in the past three decades, horseshoe crab populations have crashed, and their habitat is rapidly disappearing. Horseshoe crabs are being overharvested for both bait and blood, and their spawning beaches are threatened by development, dredging, erosion, pollution, climate change, and sea level rise.

26.     Adult horseshoe crabs are benthic creatures that inhabit shallow estuarine areas and offshore habitats near the continental shelf. Their range spans the Atlantic Coast from northern Maine to Florida, the Gulf Coast from Florida to Louisiana, and the Yucatan Peninsula. Horseshoe crabs have also been recorded in Nova Scotia, the Bahamas, Turks and Caicos, and Cuba. Their largest populations are found in Delaware Bay and coastal areas from Virginia to New Jersey. However, horseshoe crab populations and spawning have steeply declined to historic lows. Since the 1990s, the Delaware Bay's horseshoe crab population has fallen by two-thirds. Other horseshoe crab populations have experienced similar declines across most of their range. Sea level rise and extreme weather events fueled by climate change have resulted in the destruction of horseshoe crab's spawning habitat. Habitat loss threatens horseshoe crabs in their entire range. Shoreline hardening and pollution have further degraded horseshoe crab habitat. Loss of habitat has reduced the available grounds for spawning horseshoe crabs and their eggs.

27.     Horseshoe crabs are imminently threatened by habitat loss, overexploitation, inadequacy of existing regulatory mechanisms, and other natural and manmade factors, including climate change. They are in danger of extinction across a significant portion of their range, and threats are likely to persist and worsen in the foreseeable future.

**Listing Petition and Response**

28.     The Center petitioned the Service to list the American horseshoe crab under the ESA in February 2024. The Center's petition documented threats to the crab from habitat loss and degradation, impingement, pollution, harmful algal blooms, overutilization, inadequacy of existing regulatory mechanisms, climate change, and other factors.

29.     It has been over a year since the Service received the Center's petition to list the American horseshoe crab under the ESA and to designate critical habitat concurrently with listing.

30.     The Service has yet to issue a 90-day finding on the Center's petition to list the American horseshoe crab, even though the deadline for publication has passed (*Biodiversity Legal Found. V. Badgley,* 309 F.3d 1166, 1176 (9th Cir. 2002) (holding that both 90-day finding and 12-month finding must be made within one year of receipt of a listing petition).

31.     The Service's failure to publish a timely 90-day finding on the Center's petition has also led to a delay in the Service's statutorily required 12-month finding. 16 U.S.C. § 1533(b)(3)(B) (the Service must make a 12-month finding no later than one-year from receipt of the petition).

32.     Thus, the Service's 90-day finding on the Center's petition to list the American horseshoe crab is past due.

33.     Until Defendants issue the overdue finding, the American horseshoe crab will continue to lack necessary protections under the Act, contributing to their decline.

## CLAIMS FOR RELIEF

### Violation of the ESA for Failure to Publish Timely 90-Day Finding for the American Horseshoe Crab

34.     Plaintiff re-alleges and incorporates all allegations set forth in the preceding paragraphs.

35.     The ESA provides the Service with some leeway in publishing its initial finding within 90-days of receipt of the petition "to the maximum extent practicable," but in no case longer than one year. 16 U.S.C. § 1533(b)(3)(A); *Biodiversity Legal Found.,* 309 F.3d at 1176.

36.     The Service has yet to issue the required 90-day finding for the American horseshoe crab.

37.     Defendants failed to perform their nondiscretionary duty to timely publish a 90-day finding in violation of the ESA. 16 U.S.C. § 1533(b)(3)(A).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment providing the following relief:

1.  Declare that Defendants violated the ESA by failing to issue a timely 90-day finding in response to the Center's petition to list the American horseshoe crab under the ESA;

2.  Provide injunctive relief compelling Defendants to issue the 90-day findings by a date certain;

3. Retain continuing jurisdiction to review Defendants' compliance with all
   judgments and orders herein;

4. Grant Plaintiff its reasonable attorneys' fees and costs as provided by the ESA, 16
   U.S.C. § 1540(g)(4); and

5. Provide such other relief as the Court deems just and proper.

Respectfully submitted and dated January 5, 2026.

*/s/ Camila Cossío*
Camila Cossío (D.C. Bar No. OR0026)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
Phone: 971-717-6427
ccossio@biologicaldiversity.org

Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
Phone: 805-750-8852
bsegee@biologicaldiversity.org
*Pro Hac Vice Admission Pending*

*Attorneys for Plaintiff*